UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THANIA FERNANDEZ, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>CATHOLIC GUARDIAN SERVICES f/k/a CATHOLIC GUARDIAN SOCIETY AND HOME BUREAU, and CRAIG LONGLEY, individually, GRACE POPPE, individually, and DOLOREZ ORTIZ, individually,<br><br>        Defendants. | **COMPLAINT**<br><br>**Docket No.:**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff THANIA FERNANDEZ ("Plaintiff"), on behalf of herself, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs"), by and through her attorneys, Borrelli and Associates, P.L.L.C., as and for her Complaint against CATHOLIC GUARDIAN SERVICES f/k/a CATHOLIC GUARDIAN AND HOME BUREAU ("Catholic Guardian"), and CRAIG LONGLEY ("Longley"), individually, GRACE POPPE ("Poppe"), individually, and DOLOREZ ORTIZ ("Ortiz"), individually, (all, collectively, as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.     This is a civil action for damages and equitable relief based upon Defendants' violations of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York

Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers pay wages to their employees in accordance with the agreed terms of employment, N.Y. Lab. Law § 652 and 12 NYCCRR § 142, *et seq.*; (iv) the NYLL's requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information, NYLL § 195(3); and (v) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff worked for Defendants - - a non-profit organization, its Executive Director, former Site Director, and Assistant Executive Director - - as a foster care case planner from the relevant time period of in or around April 2011 through May 2, 2014, and as a non-managerial case manager from May 5, 2014 through April 12, 2017.  As described below, throughout the relevant period, Defendants willfully failed to pay Plaintiff the wages lawfully due to her under the FLSA and NYLL, in that Defendants required Plaintiff to routinely work more than forty hours per workweek, but regardless of the hours worked, Defendants only compensated Plaintiff for her first thirty-five hours of work per week.  Thus, Defendants intentionally failed to compensate Plaintiff for any hours that she worked per week exceeding thirty-five at any rate of pay, much less at her regular rate of pay for all hours up to forty, or at the statutorily-required overtime rate of time and one-half her regular rate of pay for those hours over forty.

3.      Defendants also failed to provide Plaintiff with accurate wage statements on each payday, as the NYLL requires.

4.      Defendants paid and treated all of their foster care case planners and non-managerial case managers in the same manner.

5.      Accordingly, Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of herself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of Defendants' violations of the FLSA.  Plaintiff brings her claims under the NYLL on behalf of herself, individually, and on behalf of any FLSA Plaintiff, as that term is defined below, who opts-in to this action.

## JURISDICTION AND VENUE

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York Law.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1), as one or more of the Defendants reside within this judicial district and all reside within the same state, and pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

8.      At all relevant times herein, Plaintiff worked for Defendants in New York, and was an "employee" entitled to protection as defined by the FLSA, NYLL, and NYCCRR.

9.      At all relevant times herein, Defendant Catholic Guardian is a New York non-profit corporation, with its principal place of business located at 1011 First Avenue, New York, New York 10022.

10.      At all relevant times, Defendant Longley was and is the Executive Director of Defendant Catholic Guardian.  In that capacity, Defendant Longley personally managed and oversaw the day-to-day operations of Catholic Guardian and was ultimately responsible for all

matters with respect to determining employees' rates and methods of pay and hours worked. Furthermore, Defendant Longley had the power to hire and fire and approve all personnel decisions with respect to Defendant Catholic Guardian's employees, including Plaintiff and FLSA Plaintiffs.

11.     At all relevant times, Defendant Poppe was Plaintiff's supervisor when Plaintiff worked as a foster care case planner from April 2011 through May 2, 2014.  Defendant Poppe, on a day-to-day basis, supervised foster care case planners who worked in the "1788 Grand Concourse" building where Plaintiff worked, and had significant input into determining foster care case planners' hours worked, including those of Plaintiff.  Furthermore, Defendant Poppe had the power to hire and fire and approve all personnel decisions with respect to Defendant Catholic Guardian's foster care case planners, including Plaintiff.

12.     At all relevant times, Defendant Ortiz was and is the Assistant Executive Director for Family Support Services, who personally managed and oversaw the day-to-day operations of the Family Support Services department and had significant input into determining case managers' hours worked, including those of Plaintiff during the time when Plaintiff worked as a case manager, which was from May 5, 2014 through April 12, 2017.  Furthermore, Defendant Ortiz had the power to hire and fire and approve all personnel decisions with respect to Defendant Catholic Guardian's case managers, including Plaintiff and FLSA Plaintiffs.

13.     At all relevant times herein, Defendants were and are "employers" within the meaning of the FLSA and NYLL.  Defendants' employees, including Plaintiff and FLSA Plaintiffs, were individually engaged in interstate commerce, as they, on a daily basis, communicated and coordinated with foster care sponsors located in different states, such as

4

California, Texas, Iowa, New Jersey, Florida, and Virginia.  This independently subjects

Defendants to the FLSA's overtime requirements with respect to Plaintiff and FLSA Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

14.    Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime

compensation and liquidated damages pursuant to the applicable provisions of the FLSA, 29

U.S.C. § 216(b), individually, on her own behalf, as well as on behalf of those in the following

collective:

> Current and former employees of Defendants, who during the
> applicable FLSA limitations period, performed any work for
> Defendants as foster care case planners and/or non-managerial case
> managers, and who consent to file a claim to recover damages for
> overtime compensation that is legally due to them ("FLSA
> Plaintiffs").

15.    Defendants treated Plaintiff and FLSA Plaintiffs similarly in that Plaintiff and

FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section

below; (2)  were subject to the same laws and regulations; (3) were paid in the same or similar

manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid

the required one and one-half times their respective regular rates of pay for all hours worked per

workweek in excess of forty.

16.    At all relevant times, Defendants are and have been aware of the requirements to

pay Plaintiff and FLSA Plaintiffs at an amount equal to the rate of one and one-half times their

respective regular rates of pay for all hours worked each workweek above forty, yet they

purposefully and willfully chose and choose not to do so.

17.     Thus, Plaintiff and FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty, in violation of the FLSA.

## BACKGROUND FACTS

18.     Defendant Catholic Guardian is a New York non-profit corporation that places undocumented children with foster care sponsors.

19.     In or around July 2007, Plaintiff commenced her employment with Defendant Catholic Guardian Services as a foster care case planner, and she worked in that role until May 2, 2014.  The last paycheck that Plaintiff received for her work as a foster care case planner was in the first week of May 2014.

20.     As a foster care case planner, Plaintiff worked with children's parents to finalize the custody process and monitored children's health and well-being while under their parents' care.

21.     From at least in or around April 2011 through May 2, 2014, Defendants required Plaintiff to work, and Plaintiff did work, five to six days per week, Monday through Friday, and at least one Saturday per month, from 9:00 a.m. until 5:00 p.m., without being permitted an uninterrupted break each day, totaling forty-eight hours worked per week on those weeks when she worked on Saturdays.

22.     By way of example only, during the week of March 11 through March 17, 2013, Defendants required Plaintiff to work, and she did work, six days, Monday through Saturday, from 9:00 a.m. until 5:00 p.m.   Accordingly, Plaintiff worked forty-eight hours during this workweek.

23.     As a second example, during the week of January 20 through January 26, 2014, Defendants required Plaintiff to work, and she did work, six days, Monday through Saturday, from 9:00 a.m. until 5:00 p.m.   Accordingly, Plaintiff worked forty-eight hours during this workweek.

24.     For her work as a foster care case planner, Defendant Catholic Guardian paid Plaintiff a bi-weekly salary of approximately $1,600.00, regardless of whether one of the weeks during the pay-period was a week when Plaintiff worked on Saturday.   As reflected on her paystubs, this bi-weekly salary was intended to cover only the first thirty-five hours that Plaintiff worked each week, which amounts to an hourly rate of $22.86.

25.     From at least in or around April 2011 through May 2, 2014, Defendant Catholic Guardian did not pay Plaintiff at any rate of pay for any hours that she worked per week in excess of thirty-five.

26.     On May 5, 2014, Defendant Ortiz promoted Plaintiff to the position of "case manager," a managerial position in name only, a position she held until April 12, 2017.

27.     Plaintiff's primary duties as case manager consisted of making foster care arrangements for undocumented children, conducting intakes, handling tasks related to the children's medical care, as well as being available at all times to respond to any and all emergencies that arise with the foster children, including but not limited to, their behavioral problems, placement issues, and medical concerns that required immediate attention.

28.     Throughout her employment as case manager, Plaintiff never directed the work of any employees.   Moreover, Plaintiff did not have the authority to hire or fire any of Defendants' employees and her suggestions to hiring and firing decisions were not given any weight.

29.     From May 5, 2014 through the end of December 2016, Defendants required Plaintiff to work, and Plaintiff did work, five to six days a week, from Monday through Friday, and at least one Saturday or one Sunday a month, from 9:00 a.m. until 5:00 p.m., without being permitted to take an uninterrupted break each day, totaling either forty or forty-eight scheduled hours during those weeks when Plaintiff was required to work one day on the weekend.

30.     Additionally, from May 19, 2014 through July 2016, Defendants assigned Plaintiff a company cell phone and required her to respond to any emergencies that arose after her regular weekday schedule ended, from 5:00 p.m. through 11:00 p.m., five to six days per week on days when she was working, meaning that Plaintiff worked between seventy and eighty-four hours per week during that time.

31.     In or around January 2017 and continuing through the end of her employment on April 12, 2017, Defendants no longer required Plaintiff to work on the weekends as a matter of course, yet Defendants still required Plaintiff to work weekend days, always putting her over forty hours for the week, on one day's advance notice.

32.     By way of example only, during the week of September 29 through October 5, 2014, Defendants required Plaintiff to work, and she did work, six days, Monday through Saturday, from 9:00 a.m. until 5:00 p.m.  Additionally, Defendants required Plaintiff to respond to emergency phone calls from 5:00 p.m. through 11:00 p.m., Monday through Saturday. Accordingly, Plaintiff worked a total of eighty-four hours during this workweek.

33.     As a second example, during the week of May 4 through May 10, 2015, Defendants required Plaintiff to work, and she did work, six days, Monday through Saturday, from 9:00 a.m. until 5:00 p.m.   Additionally, Defendants required Plaintiff to respond to

emergency phone calls from 5:00 p.m. through 11:00 p.m., Monday through Saturday. Accordingly, Plaintiff worked a total of eighty-four hours during this workweek.

34.     From May 5, 2014 through in or around October 2016, for her work as case manager, Defendant Catholic Guardian paid Plaintiff a bi-weekly salary of $1,651.96, regardless of whether one of the weeks during the pay-period was a week when Plaintiff worked on Saturday or Sunday.  As reflected on her paystubs, this bi-weekly salary was intended to cover only the first thirty-five hours that Plaintiff worked each week, which amounts to an hourly rate of $23.60.

35.     From November 2016 through April 12, 2017, for her work as case manager, Defendant Catholic Guardian paid Plaintiff a bi-weekly salary of $1,668.48, regardless of whether one of the weeks during the pay-period was a week when Plaintiff worked on Saturday or Sunday.  As reflected on her paystubs, this bi-weekly salary was intended to cover only the first thirty-five hours that Plaintiff worked each week, which amounts to an hourly rate of $23.84.

36.     From May 5, 2014 to April 12, 2017, Defendant Catholic Guardian did not pay Plaintiff at any rate of pay for any hours that she worked per week in excess of thirty-five.

37.     As described above, Defendants paid Plaintiff on a bi-weekly basis.

38.     On each occasion when Defendants paid Plaintiff, Defendants failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, Plaintiff's regular hourly rates of pay, her overtime rates of pay, and/or the number of hours that she worked per week.

39.     Defendants treated Plaintiff and FLSA Plaintiffs in the same manner described herein.

40.     Defendants acted in this manner to maximize their profits and minimize their labor costs and overhead.

41.     Each hour that Plaintiff and FLSA Plaintiffs worked was for Defendants' benefit.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime in Violation of the FLSA*

42.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

43.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate of not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

44.     As described above, Defendants are employers within the meaning of the FLSA while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

45.     As also described above, Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

46.     Defendants willfully violated the FLSA.

47.     Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

48.     Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages, attorneys' fees, and costs and disbursements in this action for Defendants' violation of the FLSA's overtime provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime in Violation of the NYLL and NYCCRR*

49.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

50.     NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

51.     As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff, and any FLSA Plaintiff who opts-in to this action, are employees within the meaning of the NYLL and the NYCCRR.

52.     As also described above, Plaintiff, and any FLSA Plaintiff who opts-in to this action, worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

53.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

54.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are also entitled to liquidated damages, interest, attorneys' fees, and costs and disbursements in this action for Defendants' violations of the NYLL's and NYCCRR's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Pay Wages in Violation of the NYLL*

55.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

56.     NYLL §§ 190, 191, and 663(1) require that employers pay timely wages to their employees in accordance with the agreed terms of employment.

57.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff, and any FLSA Plaintiff who opts-in to this action, are employees within the meaning of the NYLL.

58.     As also described above, Defendants failed to compensate Plaintiff, and any FLSA Plaintiff who opts-in to this action, at their respective regular rates of pay for each hour that they worked in accordance with their terms of employment.

59.     At the least, Plaintiff, and any FLSA Plaintiff who opts-in to this action, are entitled to recover for all hours worked for Defendants but for which Defendants did not provide compensation at their respective regular rates of pay.

60.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, are entitled to liquidated damages, interest, attorneys' fees, and costs and disbursements in this action for Defendants' failure to pay them their wages in accordance with the agreed terms of employment.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

61.     Plaintiff, and any FLSA Plaintiff who opts-in to this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

12

62.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

63.     As described above, Defendants failed to furnish Plaintiff, and any FLSA Plaintiff who opts-in to this action, with accurate wage statements on each payday containing the criteria required by the NYLL.

64.     Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, and any FLSA Plaintiff who opts-in to this action, in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

65.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff, and any FLSA Plaintiff who opts-in to this action, in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## DEMAND FOR A JURY TRIAL

66.     Pursuant to FRCP 38(b), Plaintiff and FLSA Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and FLSA Plaintiffs demand judgment against Defendants as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendants from any retaliation against Plaintiff and/or any FLSA Plaintiff for participation in any form in this litigation;

d.      Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      All damages that Plaintiff and FLSA Plaintiffs have sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

f.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL and as consistent with law;

g.      Awarding Plaintiff and FLSA Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and a service payment to Plaintiff;

h.      Designation of Plaintiff and her counsel as collective action representatives under the FLSA;

i.      Pre-judgment and post-judgment interest, as provided by law; and

j.    Granting Plaintiff and FLSA Plaintiffs such other and further relief as this Court finds necessary and proper.

Dated: Great Neck, New York
       April 28, 2017

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel.: (516) 248-5550
Fax: (516) 248-6027

_____

JOAN B. LOPEZ, ESQ (JL 4337)
ALEXANDER T. COLEMAN, ESQ (AC 1717)
MICHAEL J. BORRELLI, ESQ (MB 8533)