UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THANIA FERNANDEZ, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>CATHOLIC GUARDIAN SERVICES f/k/a CATHOLIC GUARDIAN SOCIETY AND HOME BUREAU, and CRAIG LONGLEY, individually, GRACE POPPE, individually, and DOLORES ORTIZ, individually,<br><br>        Defendants. | **Case No.:  17-cv-3161(ER)** |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND LEAVE TO DISTRIBUTE NOTICES

Joseph B. Cartafalsa, Esq.
Andrew C. Karter, Esq.
PUTNEY, TWOMBLY, HALL & HIRSON LLP
521 Fifth Avenue,
New York, New York 10175
(212) 682-0020
Attorneys for Defendants

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**..........................................................................................................**2**

**PROCEDURAL BACKGROUND** ...............................................................................**2**

**FACTUAL BACKGROUND** ........................................................................................**3**

    I.     Foster Boarding Home Program Caseworker ........................................................ 4

    II.    Unaccompanied Alien Children Case Managers ................................................. 5

**ARGUMENT** .................................................................................................................**8**

    I.     Plaintiffs' Evidentiary Burden When Seeking Conditional Certification............. 8

           A.    Plaintiff is an Exempt Professional ...................................................... 10

           B.    CGS is not an Enterprise Covered by the FLSA ................................. 14

           C.    Plaintiffs' Declarations Do Not Provide Meaningful Evidence for the
                Court to Consider with Respect to the FLSA's Professional
                Exemption ............................................................................................. 14

    II.    The Court Should Stay the Motion for Class Certification Pending Bifurcated
          Discovery .......................................................................................................... 14

    III.   Plaintiff Improperly Seeks to Represent Opt-Ins on NYLL Claims.................... 16

    IV.   Plaintiff's Proposed Notice is Otherwise Deficient in Several Respects............. 17

    V.    Plaintiff's Request for Tolling is Excessive....................................................... 19

    **CONCLUSION** ..........................................................................................................**20**

**PROPOSED ALTERNATIVE TO
CLASS CERTIFICATION
IN THE INTEREST OF JUSTICE**

As an alternative to ruling on class-certification at this time, Defendants respectfully request that Your Honor stay the instant motion and order the parties to complete limited and/or expedited discovery as to FLSA coverage and the professional exemption.  (See, Point II, below)  Upon the conclusion of such discovery, the parties can file dispositive motions on the issues of FLSA coverage and the professional exemption.  Defendants would agree to tolling the FLSA status of limitations for potential class members pending a decision and order on the motions.  Defendants would be amenable an expedited discovery period and modest briefing schedule to avoid delays.  Class certification could be ruled upon, if necessary, if the case is not dismissed.

Class-certification is not required in an FLSA case.  Indeed whether (and when) to conditionally certify a class is within Your Honor's discretion.  Defendants believe the proposed alternative would be in the interests of justice.  First, no potential class members would be prejudiced given the tolling.  Second, the parties could potentially avoid the time, expense and business interruption caused by litigating on a class basis.  Third, the proposed alternative would not significantly, if at all, delay the action, and instead has the option of greatly speeding ultimate resolution.  Finally, the proposed alternative would avoid potentially unnecessary discovery on time-consuming issues such as hours worked each work week.

As to the last point, Defendants note that CGS maintained (and produced) weekly time sheets for Plaintiff Fernandez. (Cartafalsa ¶ -). CGS requires all employees, exempt and non-exempt, and even including executives, to submit bi-weekly time sheets.  It appears that Plaintiff may argue that her time sheets are incorrect; if that is the case, discovery for her hours worked likely becomes a very time consuming endeavor that could potentially be avoided under the proposed alternative. (See Fernandez Declaration at ¶¶ 8, 18, and 49).

1

## INTRODUCTION

Despite the modest burden at the conditional certification stage, Plaintiff has fallen well short of meeting it.  Specifically, the facts alleged in the Complaint are insufficient to defeat the professional exemption, and the declarations submitted likewise allege no facts sufficient to defeat such exemption.  Instead, the declarations are essentially identical, conclusory statements about a policy of not paying overtime; the declarations provide little evidence as to job duties. As Defendants' counsel raised at the August 4, 2017 Conference before Your Honor ("Conference"), CGS's policy is simply **not** unlawful as Plaintiff is an exempt salaried professional.[1]  Despite Defendants' having raised this issue at the Conference (and in prior dealing with counsel), the declarations in support of Plaintiff's motion do not allege any facts to show that Plaintiff was misclassified as an exempt professional.

## PROCEDURAL BACKGROUND

By letter dated July 27, 2016, Plaintiff's counsel contacted CGS and threatened legal action.  By letter dated August 10, 2016, Plaintiff's counsel sent another letter. (Cartafalsa ¶ __, Ex. A).  In the August 10 letter, counsel states that Plaintiff has "**more** responsibility than any of the other case managers."  (Cartafalsa ¶ 3; Ex. A).  This questions the similarly situated arguments.

The letter further explains that Plaintiff:  "is required to coordinate foster care arrangements for alien children, conduct intakes, handle all tasks related to coordinating the medical care for the foster children, as well as be available at all times to respond to any and all emergencies that arise with the foster children with whom CGS assigns her to work, including

---

[1] As are the other putative class members.  For simplicity, this memo refers to "Plaintiff" but arguments would apply to the proposed class members.

but not limited to a foster child's behavioral problems, placement issues, or medical concerns that require immediate attention."  (Cartafalsa ¶4; Ex. A). The allegations in Plaintiff's Counsel's letter are in contrast to Counsel's statement at the Conference that Plaintiff was a mere "pencil pusher."

In response to this letter, the undersigned told Plaintiff's counsel that as a non-profit, the relevant programs were exempt from enterprise coverage under the FLSA, and that even if not exempt, Plaintiff was a salaried exempt professional.  (Cartafalsa ¶ 5).  After counsel's exchanges, Plaintiff continue to work at CGS until her resignation on or about April 12, 2017.  (Fernandez ¶ 2).  Plaintiff filed her complaint on April 28, 2017. [ECF 1].  By letter dated July 17, 2017, Plaintiff's counsel requested leave to seek class certifications pursuant to 29 U.S.C. §216(b).  [ECF 23].

On August 4, 2017, counsel appeared before Your Honor for a Conference.  (A copy of the transcript is attached to the Cartafalsa Affirmation as Ex. B).

## FACTUAL BACKGROUND

Catholic Guardian Services ("CGS") in a non-profit social service agency that provides various social services, including child abuse and neglect prevention services, care programs, programs for persons with developmental disabilities, family support services, and maternity services.  The programs at issue here involved CGS's Foster Boarding Home ("FBH") Program and Unaccompanied Alien Children ("UAC") Program.

Individual Defendant Craig Longley ("Longley") is CGS's Executive Director.  Individual Defendants Grace Poppe and Dolores Ortiz serve as Deputy Director of Social Services and Assistant Executive Director and Administrative Officer, respectively.

Plaintiff Fernandez served as FBH Caseworker from July 2007 to May 2, 2014 and a UAC Case Manager from May 5, 2014 to April 12, 2017.  (Fernandez ¶ 2).

3

CGS pays all Caseworkers and Case Managers on a salary basis of greater than $455/week.  (Pacheco ¶ 4).  Plaintiff's bi-weekly salary was approximately $1,600. (Complaint ¶ 24).   Different titles are used because of the different programs at CGS.  *Id.*

All Caseworkers and Case Managers are **required** to have at least a Bachelor's degree in Social Work or a related field.  (Pacheco Ex A and B).

### Foster Boarding Home Program Caseworker

FBH Caseworkers are required to have a Bachelor's in Social Work (preferred) or a related field, and experience in child welfare is helpful.  (Pacheco Ex. A).  A generalized course of social science study is insufficient to qualify for this position.  (Ashare ¶ 2).

CGS's Foster Boarding Home Program provides services "in accordance with principles of good social work practices" to children in foster homes.  Such services include evaluating foster children and the developing of child-specific service plans based on such evaluations; providing behavior management counseling; and assessing and identifying issues and recommending treatment/plans on the basis of such assessments, engaging with birth families to tailor and deliver services for the purposes of reunification with the foster child, and addressing issues which necessitated placement to begin with.  (Pacheco Ex A).

Caseworkers are required to have at a minimum, a Bachelor's in Social work or a related field.  Additional Caseworker duties include, but are not limited to the following:

- identify issues which may require the transfer of foster child from one level of care to another, including following high risk case review protocol;

- implement effective behavior management and, if appropriate, substance abuse prevention programs;

- respond to rapidly changing needs of foster children;

- understand, assess and engage children, families and resource parents in the service plan process and create workable and realistic service plans;

4

- establish and develop relationships with various community service programs to best address a foster child's particular needs;

- plan and address the foster child's acquisition of skills necessary for emancipation; and

- advance the developmental needs of the foster children.

(See, Pacheco Ex. A).  Clearly, Caseworkers exercise independent discretion and judgment over matters of great significance.

### Unaccompanied Alien Children Case Managers

Caseworkers, a/k/a Case Managers, are required to have, at a minimum, a Bachelor's of Social Work (BSW), or other Bachelor's degree in psychology, sociology or other relevant social services or behavior field, employment experience in a relevant field, and knowledge of child welfare/child protective services.  (Pacheco Ex. B).  A generalized course of social science study is insufficient to qualify for this position.  (Ashare ¶ 2).

CGS's UAC Program provides shelter and care for unaccompanied minor alien children from foreign countries, through a partnership with the U.S. Office of Refugee Resettlement ("ORR") Program.  Many of these minors are sent to the United States by their families to escape poverty or abuse in various forms, such as persecution, human trafficking, gangs and forced labor.  These children are not U.S. citizens and have been apprehended by immigration officials or other authorities while traveling alone or without an adult.  (Ashare ¶ 3).  These children are typically in the care of CGS for 30-60 days during which CGS Case Managers and their team attempt to locate a U.S.-based "sponsor" – typically a parent, family member, or family friend – with whom the child can live pending the final outcome of legal proceedings involving their immigration status.  (Ashare ¶ 4).

UAC Case Workers are required by the ORR to undergo specific training prior to serving as a Case Worker in a UAC program.  The training includes evidence-based Trauma Focused-

5

Cognitive Behavioral Therapy ("TF-CBT").  (Pacheco Ex. B).   Plaintiff Fernandez and all other

Case Managers have taken such training. The ORR training includes areas such as:

- Behavior management approaches

- Non-violent restraint techniques

- Immigration and child welfare systems

- Child Development Theory

- Loss and family separation

- Child trafficking and smuggling

- Child abuse reporting requirements

(Ashare ¶ 6).

CGS provides shelter to UAC children either in its group shelters (for boys 12-17½ years

of age) or transitional foster boarding homes with foster families supervised by CGS pending

placement with a suitable sponsor.  Among other things, CGS Case Managers interview the

children and family members (and potentially others) to determine if trafficking, gang violence,

forced labor or similar abuse is an issue in each case.  Case Managers recommend appropriate

services and treatment of the UAC children while under CGS care.  (Ortiz ¶ 3).  Case Managers

work closely with any transitional foster families to ensure appropriate care and treatment of the

UAC children in their homes, and to help determine whether the foster families notice any

behavioral or other issues with the UAC child under their care.  (Ortiz ¶ 3).

Importantly, Case Managers also conduct multiple interviews of potential sponsors (and

family members in the home country) to determine whether it is safe to place the children under

the care of the sponsor.  (Ortiz ¶ 4).  The Case Manager makes a **recommendation** to the ORR

about whether the UAC child should be released to the care of the sponsor.  In all known

instances, the ORR has ultimately accepted the Case Manager's recommendation of release to the sponsor. (Ortiz ¶ 4).

The Case Manager job description explains, among other things:

> "CGSHB's Unaccompanied Alien Children Services Program serves children/youth **presenting a range of challenging behaviors**, especially those related to **symptoms of trauma**. The Program's services are provided by bilingual (Spanish/English) staff who receives specialized training in the **special needs** of refugee children and in Evidence-Based Trauma Focused-Cognitive Behavioral Therapy (TF-CBT). The program provides a safe, therapeutic environment in a family-like setting that addresses the requirements of each child/youth in a manner that is sensitive to his or her age; preserves cultural, ethnic and religious heritage; and meets dietary needs, native language, sexual orientation, gender identity, and other critical individual needs."

(Pacheco Ex. B; *emphasis added*). Case Manager's significant responsibilities for the care of the UAC children include, but are not limited to, the following:

- Maintain direct contact with each child/youth assigned
- Maintain direct contact with the child's/youth's family to the extent possible
- Interview and assess potential sponsors and family members to access the propriety of the sponsor.
- Recommend where appropriate, the release of a UAC child to the care of a sponsor
- Provide services focused on completing safe and efficient family reunification
- Develop and implement of Individual Service Plans for UAC children
- Screen for human trafficking and other concerns

(Pacheco Ex. B; Ortiz ¶ 3-5). In short, Case Managers are not "pencil pushers," but provide therapeutic social services to children presenting a range of challenging behaviors. Perhaps most significantly, it is the Case Manager who recommends to the ORR whether a UAC child should be released to the care of a particular sponsor based on the Case Manager's assessment of each sponsor. Clearly, Case Managers exercise independent discretion and judgment over matters of great significance.

**ARGUMENT**

Plaintiff's motion does not present the Court with sufficient evidence of an unlawful policy to justify class certification and the increased cost and expense of defending a class action, particularly one where Plaintiff appears to argue that her signed time sheets do not accurately reflect her true hours worked, potentially requiring discovery and testimony as to the hours worked on a week-by-week basis.  Apart from conclusory declarations which merely mimicked the complaint to list some functions that were "included" in her responsibilities, Plaintiff does not in detail address her duties or provide evidence as to why she did not fall within the professional exemption.  Courts have regularly denied motions for conditional certification based on evidence that is similarly generic and non-probative of the key issues as whether any employees have been misclassified as exempt.

**I.     Plaintiffs' Evidentiary Burden When Seeking Conditional Certification**

Under Second Circuit precedent, Plaintiffs' burden at this stage is to demonstrate that "they and potential opt-in plaintiffs together were victims of a common policy or plan that **violated the law**." *Myers v. Hertz Corp*, 624 F.3d 537, 555 (2d Cir. 2010) (citations and internal quotations omitted) (emphasis added).

Defendants are mindful that while at the conditional certification stage the Court's role is not to resolve the ultimate issues in this case, "the law governing whether [Defendants] will ultimately be liable to Plaintiffs is nonetheless relevant to the Court's inquiry because authorizing notice to potential option plaintiffs is appropriate only upon a sufficient showing that there are individuals who are similarly situated to Plaintiffs 'with respect to whether a FLSA **violation** has occurred.'"  *Mark v. Gawker Media LLC,* 2014 WL 4058417, at *2 (S.D.N.Y. 2014) (emphasis added), quoting *Myers*, 624 F. 3d at 555.  *See, also, Fraticelli v. MSG Holdings, L.P.,* 2014 WL 1807105, at *2 (S.D.N.Y. 2014).

8

Admittedly, Plaintiff "need only make a modest factual showing that [she] and potential option plaintiffs together were victims of a common policy or plan that violated the law.'" *Ikikhueme v. CulinArt, Inc.*, 2013 WL 2395020, at *2 (S.D.N.Y. 2013), (quoting *Myers*, 624 F.3d at 555 (omitting internal quotations).  However, "At the same time, the plaintiff's burden 'cannot be satisfied simply by unsupported assertions.'"  *Id.*  As this Court has explained "[w]hile [p]laintiff's burden of proof is low, it is not non-existent-certification is not automatic." *Ikikhuene* at *3, quoting *Romero v. H.B. Auto Group, Inc.*, 2012 WL 1514810, at *10 (S.D.N.Y. 2012).

Plaintiff must point to evidence that she was misclassified as exempt, and that CGS **violated the law** by paying her on a salary basis.  *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("*Guillen I*") (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997); *Myers*, 624 F.3d at 555; *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012); *Heitzenrater v. Officemax, Inc.*, 2014 WL 448502, at *3, (W.D.N.Y. 2014).  In reviewing a motion for conditional certification, courts may consider all of the evidence submitted by the parties, including evidence that contradicts the plaintiffs' assertions. *See Vasquez v. Vitamin Shoppe Industries, Inc.*, 10- cv-8820, 2011 U.S. Dist. LEXIS 74376, at *5-6 (S.D.N.Y. July 11, 2011) (considering defendants' evidence and declining to grant conditional certification).

Several courts have denied conditional certification when faced with motions lacking meaningful factual support, as found in Plaintiffs' current Motion.  See *Jenkins,* 53 F. Supp. 2d at 325; *Guillen I*, 750 F. Supp. 2d at 469; *Guillen v. Marshalls of MA, Inc.*, 841 F.Supp. 2d 797 (S.D.N.Y. 2012) ("*Guillen II*"); and *Ahmed v. T.J. Maxx Corp.*, No. 10–Civ–3609, 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013).  Together, these cases confirm that plaintiffs seeking

conditional certification for alleged misclassification claims must persuade the Court that there is a policy that **violates the FLSA**.  *Ahmed*, 2013 WL 2649544 at *11-13 (emphasis added) (citing, inter alia, *Guillen II*, 841 F. Supp. 2d. at 800-01; and *Jenkins*, 853 F. Supp. 2d. at 322-23). *See, also, Balderramo v. Go New York Tours Inc.*, 2017 WL 2819863, at *7 (S.D.N.Y. 2017) (Ramos, J.) (Plaintiffs must show that they and potential opt-ins "together were victims of a common policy that *violated the law*.") (Emphasis added).

## A.    Plaintiff is an Exempt Professional

The FLSA exempts from its overtime requirements "any employee employed in a bona fide executive…professional… capacity." 29 U.S.C. § 213(a)(1). Under the DOL's implementing regulations, an employee fits the professional exemption if: (1) compensated on a salary or fee basis at a rate of not less than $455 per week; and (2) whose primary duty is the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. § 541.300(a).

The phrase "work requiring advanced knowledge" means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment as distinguished from performance of routine mental, manual, mechanical or physical work. *Id.* § 541.301(b). The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. *Id.* § 541.301(d). "**The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree**." *Id.* (emphasis added).

Here, CGS at all times treated Plaintiff as salaried exempt, and paid her a bi-weekly salary of at least $1,600, well in excess of the $455 per week required.  (Complaint ¶ 24). Indeed, as then-required under New York law, CGS gave Plaintiff annual notices reflecting that she was paid on **a salary** basis, rather than hourly.  *Id.*[2]  It can't be disputed that Defendants have met the first prong of the professional exemption test.

Further, here the positions at issue each required a degree in social work or a related field, and in fact Plaintiff had a Bachelor's and Master's degree in Social Work, as did many of her co-workers. Katherine Pineyro has a Bachelor's Degree in Behavioral Science.  Purported opt-in Jissette Vargas has a Master's Degree in Teaching; Purported opt-in Auribeny Troncoso De Jesus has a Bachelor's Degree in Forensic Psychology and Criminology, and a Master's Degree in Education. (Cartafalsa ¶ 7).  Defendants have therefore met the second prong of the professional exemption test.

At the Conference, in response to Your Honor's questions AS TO WHETHER Plaintiff "made any decisions concerning whether or where children are going to be placed in foster care…" Plaintiff's counsel responded "I do not believe so, Your Honor." (Tr. p. 9, l. 13-18).  We highlight that one of Plaintiff's explicit duties as a Case Manager was to recommend to ORR whether or not a UAC child under CGS care should be released to the care of a sponsor (who is typically a family member).  This is akin to a the decision to release a foster child to his or her foster parents, and is in fact more complex give the myriad immigration, abuse, trafficking, forced labor and related issues faced by UAC children and their sponsors.  As a FBH Caseworker, Plaintiff made similar decisions as to the care plan and services, including a plan for emancipation, provided to foster children, foster families, and birth parents.  In short, Plaintiff

---

[2] Plaintiff's allegations in the Complaint (at ¶¶61-65) that she was not provided the then-required New York Wage Theft Prevention Act Notice is baseless. (Cartafalsa ¶ __; Ex. __).

was no mere "pencil pusher" – she was regularly required to use her social worker skills and discretion and independent judgment to make decisions and plan a course that literally impacted the lives of children, foster families/sponsor, and birth families.

It is well settled that Social Workers/Caseworkers with experience and duties similar to those here are exempt professionals under the FLSA.[3]  Courts have also consistently held that Caseworkers/Social Workers are exempt from the FLSA's overtime provisions.  *See, e.g., Paul v. Lenox Hill Hospital,* 2016 WL 4775532 at *22 (E.D.N.Y. 2016); *Levine v. Unity Health System,* 847 F.Supp. 2d 507 (W.D.N.Y. 2012); *Rosenberg v. Renal Advantage, Inc.*, 2014 WL 1652580 (S.D. Cal. 2014); *Chatfield v. Children's Services, Inc.*, 555 F.Supp. 2d 532 (E.D. Pa 2008); *Rieve v. Coventry Health Care, Inc.,* 870 F.Supp 2d 856 (C.D. Ca 2012); *Withrow v. Sedgwick Claims Mgmt. Service, Inc.*, 841 F.Supp. 2d 972 (S.D.W. Va. 2012).  Courts have also held that other job titles seemingly less professional than social workers are indeed exempt professionals.  *See, e.g., Owsley v. San Antonio Independent School Dist.*, 187 F. 3d 521 (5th Cir. 1999) (ruling that athletic trainers at a high school were exempt professionals); *Reich v. Wyoming,* 993 F. 2d 739 (10th Cir. 1993) (a degree in wildlife management or wildlife biology, along with law enforcement training, sufficient for funding game warden to be exempt professionals).

The *Chatfield v. Children's Service, Inc.* decision is particularly instructive as it involved a social services agency similar to CGS.  In *Chatfield*, plaintiff ("Chatfield") was employed by a social service agency that provided child welfare, behavioral health, and after-school programs to children and families.  Chatfield was a "Truancy Prevention Case Manager" responsible for

---

[3] Plaintiff is similarly exempt under the NYLL which "applies the same exemptions as the FLSA."  *Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*, 151 F. Sup. 3d 460, 467 (S.D.N.Y. 2015) (internal quotations omitted), quoting *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010).  *See also Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n. 1 (2d Cir. 2012).

"assessing whether truancy [was] occurring, assessing the needs of the child and his or her family, recommending treatment, and ensuring that families receive[d] appropriate resources." *Chatfield*, 555 F.Supp. 2d at 533.  There was no question that Chatfield met the salary requirement; thus the sole issue was whether he met the "primary duty" requirement under the FLSA's "learned professional exemption."  The court considered that: (1) Chatfield made assessments based on her own discretion and judgment, even when subject to a level of supervision; (2) Chatfield was required to have a bachelor's degree in social work, human services, or a related field, in addition to three years of work experience.  Moreover, the court noted that "even where there is no degree, a substantial amount of experience in the relevant field may qualify one for exemption."  *Id*. at 537.  As a result, the court held that Chatfield fell under the "learned professional exemption."

Here, Plaintiff has a Master's degree in Social Work, and regularly uses independent discretion and judgment over matters of significance – including decisions that affect the health, safety and living conditions of children.  Indeed, based on her assessment of a sponsor and all relevant facts and circumstances, Plaintiff recommended to the ORR whether a UAC child should be released to the care of the sponsor.  While at times the ORR may have asked follow-up questions based on Plaintiffs recommendations, in all cases, the ORR accepted such recommendations.  (Ortiz 4).  Plaintiff, and all others in the FBH Caseworker and UAC Case Manager job classifications, are exempt salaried professionals under the FLSA.

**B.      CGS is not an Enterprise Covered by the FLSA**

Defendants' counsel raised its coverage defense found in the <u>Bowrin, et. al. v. Catholic</u>

<u>Guardian Society</u> case in pre-litigation discussions with Plaintiffs' counsel.  <u>Bowrin</u>, 417 F. Supp

2d 449 (S.D.N.Y. 2006). (Counsel from Borrelli & Associates at such time was Pooja Bhutani,

Esq. who has not appeared in this action).  (Cartafalsa Ex. A, B).

Specifically, Defendants' FLSA coverage defense is that the CGS programs at issue here

are **not** covered enterprises under the FLSA.[4]  In a case literally involving CGS, the Court ruled

that CGS's programs, other than its Mental Retardation and Developmental Disabilities

("MRDD") program and Assertive Community Treatment ("ACT") program, are **not** covered by

the FLSA.  According to Judge Holwell:  "all [CGS's] services other than the MRDD and ACT

programs are not performed for a statutorily recognized business purpose" and are **not** covered

by the FLSA.  <u>Bowrin</u>, 417 F.Supp.2d at 465.  *See, also, Jacobs v. New York Foundling,* 577

F.3d 93 (2d Cir. 2009) (not-for-profit social service agency is not an enterprise under the FLSA);

*Walker v. The Interfaith Nutrition Network, Inc.*, 2:14-cv-5419 (docket entry No. 22) (same).

**C.      Plaintiffs' Declarations Do Not Provide Meaningful Evidence For the Court to
         Consider With Respect to the FLSA's Professional Exemption**

Here, the jobs at issue did require degrees in social work or related fields.  (Pacheco ¶ 5;

Pacheco Ex. A, B). Plaintiff Fernandez in fact has both a Bachelor's and Master's in Social

Work.  (Cartafalsa ¶ __: Ex. --).

**II.     <u>The Court Should Stay the Motion for Class Certification Pending Bifurcated
        Discovery</u>**

---

[4] As the Complaint alleged that Plaintiff "individually engaged in interstate commerce"
(Complaint at ¶13) which arguable creates an exception to the coverage issue, Defendants did
not move to dismiss.

In <u>Lola v. Skadden Arps</u>, in response to Lola's anticipated motion seeking conditional certification, Skadden requested a stay of the certification motion pending limited discovery regarding whether Lola was engaged in the practice of law, and was thus "exempt under the FLSA." (1-13-cv-05008-RJS Doc. 44 at p1). Skadden argues for bifurcated discovery power to class certification motions. The first phase of discovery was to show whether the named plaintiffs were properly classified under the FLSA. (Id. at p. 2). Defendants then intended to move for summary judgment after the conclusion of the first phase of discovery. (Id.).

Similar to Defendants' here, Skadden argued that bifurcating discovery would be the "most prudent and cost-efficient litigation plan. It would be expensive, inefficient, and unduly burdensome to conduct collective motion practice and discovery when the case may be resolved through summary judgment…." (Id.). Again, similar to Defendants here, Skadden was willing to enter into a tolling agreement for the initial plan of bifurcated discovery and motion practice. (Id.).

By order dated September 11, 2015, the court granted Skadden's request, and ordered this "discovery in this action shall be bifurcated, with a view toward an expedited summary judgment motion." (Id., Docket entry 48).

In <u>Quinn Emanuel</u>, the plaintiff's complaint sought a FLSA collective action. Defendant's moved to dismiss. <u>Henig v. Quinn Emanuel</u>, S.D.N.Y. No. 13-cv-01432 (RA)(KNF) The court denied the motions to dismiss, then requested that the parties not proceed with full discover or motions for collective and class certification. (Docket entry 45, at p. 11). The court explained "[d]iscovery at this stage shall be limited to the issue of whether Henig was practicing law [and thus whether exempt under the FLSA]. This is a practice courts follow when a

potentially dispositive issue might be resolved through limited factual development.  See, for instance, *Kautz v. Sugarman*, 2011 WL 1330676, at *7, among other cases."  (Id.).

As in Skadden and Quinn Emanuel, Defendant's respectfully request that Your Honor stay the motion for conditional class certification pending completion of limited discovery on whether CGS is an enterprise covered by the FLSA and whether Plaintiff and similarly situated FBH Caseworkers and UAC Caseworkers are exempt professionals under the FLSA.

## III.  **Plaintiff Improperly Seeks to Represent Opt-Ins on NYLL Claims**

The Complaint seeks a §216(b) FLSA collective action.  (Complaint at ¶5).  However, as the Complaint is less than crystal clear, and because it raised New York Labor Law ("NYLL") claims, at the Conference, the undersigned specifically sought clarification.  (Aug. 4 Tr. at page 9-10, line 21-8).  Your Honor responded that:  "The only thing I am being asked to do is to grant leave to file a motion for conditional certificat[ion]."  (Aug 4 Tr. page 10, line 9-11).  Plaintiff's counsel confirmed.  (*Id.* at line 15-17).

Despite the Complaint and Plaintiff's counsel clear assertion before the Court, the opt-in consents filed, and the proposed notices provide, that the opt-ins will be represented on their NYLL claims in addition to their FLSA claims.  Further, the proposed notice seeks to be provided to employees employed for the past six-years, which is the NYLL statute of limitations, rather than the two/three year statute of limitations under the FLSA.  29 U.S.C. § 255.  As such, the opt-in consents and the proposed notices are improper, and should be rejected.  The cases cited by Plaintiff in support of a six-year statute of limitations all appear to seek Rule 23 class certification if the NYLL claims as well.  Here, Plaintiff did not seek certification of a Rule 23 class.  Further, any opt-ins should be limited to FLSA claims as there is no opt-in mechanism for NYLL claims.  To do otherwise would allow Plaintiff to use the considerably more liberal standard for a FLSA collective action certification than class certification under Rule 23, yet

16

essentially get the same benefits as Rule 23 class. *Grant v. Werner Music Group Corp.,* 2014 WL 1918602, at *4 (S.D.N.Y. 2014), quoting *Iglesias-Mendoza v. La Bell Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007).

**IV.    Plaintiff's Proposed Notice is Otherwise Deficient in Several Respects[5]**

For the reasons set forth below, Plaintiff's proposed notice to putative class members is deficient in several other ways.

First, Plaintiffs' proposed notice fails to inform potential plaintiffs that they may be obligated to participate in discovery. *See, e.g., Guan v. Long Island Bus. Inst., Inc.*, No. 15-CV-2215, 2016 WL 4257549, at *6 (E.D.N.Y. Aug. 11, 2016) (court authorizing the inclusion of defense counsel's contact information, and a statement advising that potential opt-in plaintiffs may be required to participate in discovery) (*citing e.g. Bah v. Shoe Mania, Inc.*, No. 08-CV-9380, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009)); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 520 (E.D.N.Y. 2011).

Second, Plaintiffs' proposed notice fails to identify and provide contact information for defense counsel, which courts recognize could serve as yet another source of information for notice recipients. *See, e.g., Guan*, 2016 WL 4257549, at *6; *Slamna v. API Rest. Corp.*, No. 12 Civ. 757, 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).

Third, there is no basis for requiring the posting of a notice by CGS. Inherently, posting a notice of a collective action is potentially disruptive to CGS's operations and will likely cause

---

[5] Rather than litigate over the wording of the notice, Defendants respectfully suggest that, if the Court grants Plaintiffs' Motion, the parties should be given a reasonable time to meet and confer over the content of any notice. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ("Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."); *Fernandez v. Sharp Management Corp.*, No. 16CV-0551, 2016 WL 5940918 at *6 (S.D.N.Y. Oct. 13, 2016) (requiring parties to "confer and make a good-faith effort to agree to the text of the proposed notice").

various rumors and/or concerns by employees in job categories unrelated to the action. Further, as a workplace posting will reach only **current** Caseworkers and Case Managers, and CGS has updated address for current employees, posting serves no purpose. *See Hintergerger v. Catholic Health Sys.*, No. 08-cv-380S, 2009 WL 3464134, at * 13 (W.D.N.Y. Oct. 21, 2009) (refusing plaintiff's request to post notice in workplace because plaintiff made no showing that defendant did not maintain up-to-date contact information for current employees); *Gordon v. Kaleida Health*, Civ. No. 08-cv- 378S, 2009 WL 3334784, at *11-12 (W.D.N.Y. Oct. 14, 2009) (same).

Fourth, Plaintiffs' request for e-mail addresses and cell/text numbers is overly broad. There has been no showing in this case that mailing notices to the potential class members would be insufficient. Again given the small size of approximately 25 Caseworkers and 8 Case Managers, mailing is neither particularly difficult nor ineffective. (See, Fernandez's Declaration at ¶10 and 32). Moreover, disclosing all of the information requested, including telephone numbers, cell/text numbers, and email addresses, is an unjustified intrusion into the privacy of non-parties, including many current CGS's employees. *See Hintergerger*, 2009 WL 3464134, at *11 ("The Court agrees that, in the interest of privacy, CHS need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses."); *Gordon*, 2009 WL 3334784, at *9 ("The Court agrees that, in the interest of privacy, Kaleida need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses."); *see also Arevalo v. D.J.'s Underground, Inc.*, No. DKC 09-3199, 2010 WL 4026112, at *3 (D. Md. Oct. 13, 2010) (denying plaintiffs' motion to compel defendants to produce phone numbers for the putative plaintiffs); *Campbell v. Pricewaterhouse Coopers, LLP*, No. S-06-2376, 2008 WL 2345035, at *3 (E.D. Cal. June 5, 2008) (holding telephone and social security numbers should not be released unless notification of putative plaintiffs by first class mail is insufficient).

18

Finally, Plaintiffs' proposed notice is overly broad in its proposed class definition in that it does not specify that it applies solely to Caseworkers in the Foster Boarding Home Program and Case Managers in the Unaccompanied Alien Children Program.  Such job titles exist outside such programs, and without limitation to the specific program, is likely to cause confusion.

Further, the notice often uses the title "Case Planner" rather than "Caseworker," and such use which may cause confusion.

## V.    Plaintiff's Request for Tolling is Excessive

As explained above, Defendants agree that the FLSA statute of limitations should be tolled if limited discovery on the FLSA coverage and exemption issues is granted and conditional class certification is stayed.

If the Court instead decides to conditionally certify the class, Defendants oppose Plaintiffs' request for tolling until the deadline to join the action and following dissemination of the notice has expired, as such request is excessive and extraordinary.  Indeed, many of the cases cited by Plaintiff limit tolling to the period when the Court considers the motion, rather than through the opt-in deadline. *See, e.g., Glatt v. Fox Searchlight Pictures, Inc.*, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013).   Accordingly, Defendants would agree to the more typical tolling of the FLSA statute of limitations limited to the time period when the motion is under consideration by Your Honor, but not to the expiration of the time to join the action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay the conditional certification motion and order limited bifurcated discovery followed by a dispositive motion(s) on the issue as to whether CGS is covered by the FLSA, and whether Plaintiff is an exempt professional.  Defendants agree that the Court may toll the statute of limitations for potential class members from the date of Plaintiff's instant motion for conditional class certification until and such dispositive motions are decide.  Such course would further the efficient administration of justice, would be more efficient for the Court and the parties (including the three named individual defendants), and would not-prejudice any potential opt-in.

Alternatively, Defendants respectfully request that the Court deny Plaintiff's Motion for Conditional Certification and Court-Authorized Notice.  In sum, Plaintiff has not met her burden of showing a violation of the FLSA.  The declarations do not offer meaningful evidence for the Court because they do not address the key issues relevant to the exemption analysis even through Defendants' counsel raised these deficiencies with Plaintiffs' counsel in the fall of 2016 and at the Conference.  Further, the evidence submitted by Defendants reveals that Plaintiff and the proposed class members are not mere "paper pushers," but instead that they are required to have degrees in job-related fields, and that regularly act with significant authority and discretion in carrying out their duties.

Further, to the extent the Court authorizes notice, Defendants respectfully request that the Court direct the parties to confer over a proper notice, as Plaintiff's proposed notice is deficient in several respects.

Dated:      September 14, 2017
            New York, New York

                                    Respectfully submitted,

                                    PUTNEY, TWOMBLY, HALL & HIRSON LLP

                                    By:   _____/s/_____
                                          Joseph B. Cartafalsa, Esq.
                                          Andrew C. Karter, Esq.
                                          521 Fifth Avenue, 10th Floor
                                          New York, New York 10175
                                          (212) 682-0020

                                          *Attorneys for Defendants Catholic Guardian
                                          Services, Craig Longley, Grace Poppe, and
                                          Dolores Ortiz*