UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THANIA FERNANDEZ, on behalf of herself, individually, and on behalf of all others similarly-situated,<br><br>                       Plaintiff,<br><br>   -against-<br><br>CATHOLIC GUARDIAN SERVICES f/k/a CATHOLIC GUARDIAN SOCIETY AND HOME BUREAU, and CRAIG LONGLEY, individually, GRACE POPPE, individually, and DOLOREZ ORTIZ, individually,<br><br>                       Defendants. | Case No.: 17-cv-3161(ER)<br><br>**AFIRMATION OF JOSEPH B. CARTAFALSA** |

      Joseph B. Cartafalsa, an attorney admitted in good standing before the Bar of the State of New York, hereby affirms under the penalty of perjury that the following is true and correct:

      1.     At all relevant times, I have served as counsel of record for Defendants Catholic Guardian Services ("CGS"); Craig Longley ("Longley"); Grace Poppe ("Poppe"); and Dolorez Ortiz ("Ortiz"). CGS, Longley, Poppe, and Ortiz are, collectively, "Defendants."

      2.     By letter dated July 27, 2016, Plaintiff's counsel contacted CGS and threatened legal action. By letter dated August 10, 2016, Plaintiff's counsel sent another letter. The August 10, 2016 letter is annexed hereto as Exhibit A.

      3.     In the August 10 letter, Plaintiff's counsel states that Plaintiff has "**more responsibility** than any of the other case managers." See Exhibit A (emphasis added).

      4.     The letter further explains that Plaintiff: "is required to coordinate foster care arrangements for alien children, conduct intakes, handle all tasks related to coordinating the medical care for the foster children, as well as be available at all times to respond to any and all emergencies that arise with the foster children with whom CGS assigns her to work, including

but not limited to a foster child's behavioral problems, placement issues, or medical concerns that require immediate attention." See Exhibit A.

5. In response to the August 10, 2016 letter, the undersigned told Plaintiff's counsel that as a non-profit, the relevant programs were exempt from enterprise coverage under the FLSA, and that even if not exempt, Plaintiff was a salaried exempt professionals. Counsel indicated that she was aware of the Bowrin decision.

6. On August 4, 2017, counsel appeared before Your Honor for a Conference. A copy of the transcript is annexed hereto as Exhibit B.

7. Upon review of the personnel files provided to the undersigned by CGS, purported opt-in Katherine Pineyro has a Bachelor's Degree in Behavioral Science. Purported opt-in Jissette Vargas has a Master's Degree in Teaching. Purported opt-in Auribeny Troncoso De Jesus has a Bachelor's Degree in Forensic Psychology and Criminology, and a Master's Degree in Education. The files for more recent opt-ins have not yet been provided.

Dated: New York, New York
September 14, 2017

JOSEPH B. CARTAFALSA

# EXHIBIT A

# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 1010 Northern Boulevard |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

August 10, 2016

*Via Electronic and First Class Mail*
Raphaelle Sondak, Director of Human Resources
Catholic Guardian Services
1011 First Avenue
New York, New York
Email: rsondak@catholicguardian.org

    Re:    *Thania Fernandez*

Dear Ms. Sondak:

    As you know from our prior correspondence dated July 27, 2016, the above-referenced individual has retained this office in connection with her claims against Catholic Guardian Services ("Company" or "CGS") for violations of Ms. Fernandez's rights guaranteed to her by: (1) the overtime provisions of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and N.Y. Comp. Codes R. & Regs. ("NYCCRR"); (2) Section 191 of the NYLL for failure to pay Ms. Fernandez any straight-time wages for the hours that she worked between thirty-five hours and forty per week; (3) Section 195(3) of the NYLL, which requires employers to provide employees with accurate wage statements on each payday; and (4) retaliation in violation of FLSA § 215 and NYLL § 215 for opposing the Company's illegal pay practices by issuing Ms. Fernandez two disciplinary warnings. Ms. Fernandez sets forth her specific allegations as follows:

    As you know, Ms. Fernandez commenced her employment with the Company as a Foster Care Case Planner for the foster care department over a decade ago in July 2007. Throughout her eleven year tenure with the Company, Ms. Fernandez served and continues to serve as a loyal asset. This is evidenced by the fact that CGS recently promoted her and assigns her more responsibility than any of the other case managers. Indeed, for ten out of her eleven years with

the Company, Ms. Fernandez had an unblemished employment record. Specifically, in April 2014, the Company promoted Ms. Fernandez from the foster care department to the unaccompanied alien children department ("UAC"), where Ms. Fernandez currently works. In this capacity, Ms. Fernandez is required to coordinate foster care arrangements for alien children, conduct intakes, handle all tasks related to coordinating the medical care for the foster children, as well as be available at all times to respond to any and all emergencies that arise with the foster children with whom CGS assigns her to work, including but not limited to a foster child's behavioral problems, placement issues, or medical concerns that require immediate attention. Despite being titled a "manager," Ms. Fernandez does not have any supervisory responsibilities. She certainly cannot hire and fire, nor does she suggest or recommend the hiring, firing, advancement, or any other change of status of other employees.

Starting in April 2014 after the Company promoted Ms. Fernandez and provided her with a company cell phone, the Company also began to require Ms. Fernandez to be available past her thirty-five scheduled hours per week. This lasted until July 29, 2016. Specifically, during this period, the Company required Ms. Fernandez to be available on nights and weekends to answer her company phone and tend to any emergencies that may arise, twenty-four hours a day, seven days a week. Even though the Company sets forth a weekend schedule assigning two case managers to be "on call" and be responsible for answering the agency phones on Saturdays and Sundays, the Company continued to require Ms. Fernandez to be available to answer her company phone on her non-scheduled days despite the fact that other case managers are assigned to handle the calls on weekends.

In exchange for her many hours worked or spent on call, the Company has paid and continues to pay Ms. Fernandez $825.50 per week for only the first thirty-five hours that she works each week. Accordingly, from April 2014 through July 29, 2016, the Company failed and continues to fail to pay Ms. Fernandez straight-time wages for the hours she worked from thirty-five to forty per week, or the statutorily-required overtime rate of one-and-one half times her hourly rate for the additional 128 hours that she worked each week in excess of forty. Additionally during this time, the Company failed to provide Ms. Fernandez with an accurate wage statement on each payday. Accordingly, the Company owes Ms. Fernandez for all of these hours worked, plus liquidated damages, as well as statutory penalties under the NYLL.

Making matters significantly worse is that in March 2016, Ms. Fernandez, in a group with her coworkers, complained to their direct supervisor Daniel Ascani about not being paid properly for the many hours that they worked per week. Shortly thereafter, Ascani left on paternity leave. Just days after Ascani returned from his leave on June 22, 2016, Ascani gave Ms. Fernandez a verbal reprimand for not being available to answer her company phone past her scheduled hours and on weekends. That same day, Ms. Fernandez again complained about not being properly paid for her hours worked. The following month, on July 15, 2016, Ascani issued

Page | 3

Ms. Fernandez a written warning, which again reprimanded Ms. Fernandez for not being available to answer her company phone past her scheduled hours and on weekends. These were the first disciplinary actions taken against Ms. Fernandez in her long tenure with the Company. Indeed, the timing of these actions, after Ms. Fernandez engaged in protected activity, cannot be a clearer indication of the Company's retaliatory intent.

As you can glean, the Company's liability is serious and substantial. We are confident that a federal jury will eventually decide this case in accordance with our description of the events above. For that reason, we write now to offer the Company the opportunity to resolve this matter - - expediently and confidentially - - at its inception. This letter then shall serve as a formal demand to compensate Ms. Fernandez for the financial, emotional, and other damages that the Company has caused her and that are continuing to accrue. Moreover, because Ms. Fernandez's claims relate to unpaid wages, we request that you execute and return the enclosed Tolling Agreement to our attention. This Agreement will permit the parties to discuss settlement. If we do not hear from someone and receive an executed Tolling Agreement within ten days of the date of this letter, we will assume that the Company has no interest in resolving this matter in such a manner and we will proceed accordingly.

The above-referenced text is merely a summary, should in no way be construed as a complete recapitulation of all pertinent facts, and is written without prejudice and without waiver of, and in fact with full reservation of, all of our client's rights and remedies.

Please note this letter constitutes a notice of intent to sue and any and all documents, including, but not limited to, contracts, reports, notes, memoranda, bills, receipts, e-mail correspondence, and any other electronically stored information, relating to Ms. Fernandez, whether or not pertinent and/or material to the aforementioned claims, or to any potential claims that she may have, should be preserved to every extent possible.

We also request that in responding to this letter you provide us with a full and complete copy of Ms. Fernandez's personnel file, along with Ms. Fernandez's payroll records and timesheets. We will obtain this information in discovery should CGS not provide it voluntarily now.

Respectfully,

Pooja Bhutani, Esq.
*For the Firm*

C:   Client

## TOLLING AGREEMENT

**AGREEMENT** made this _____ day of _____, 2016, by and between Thania Fernandez ("Fernandez"), on the one hand, and Catholic Guardian Services ( "the Employer"), on the other hand, (Fernandez and Employer together as "the Parties"):

**WHEREAS**, the Parties expect to commence confidential discussions with respect to the resolution of certain issues that have arisen between them related to Fernandez's employment with the Employer; and

**WHEREAS**, each of Fernandez's claims against the Employer are subject to the applicable statute of limitations; and

**WHEREAS**, the Employer received a letter of Fernandez's intent to sue dated August 10, 2016; and

**WHEREAS**, the Parties believe that their ability to reach an acceptable and equitable resolution of such issues would be enhanced if their discussions were conducted on a confidential and non-adversarial basis and in the absence of any formally filed complaint; and

**NOW, THEREFORE, IT IS AGREED** as follows:

1. The Parties and/or their respective attorneys shall engage in confidential discussions in an effort to resolve the issues that have arisen between them, and Fernandez shall not serve or file a complaint, or commence any other legal or administrative proceeding with respect to such issues, prior to and through September 30, 2016.

2. In the event that the Parties fail to reach a resolution of such issues and Fernandez files a complaint or commences some other legal or administrative proceeding at any time during the month of October 2016:

(a) the Employer shall not contend (and the Employer hereby waives any right to contend) that, solely by virtue of the passage of time between August 10, 2016, and the date that Fernandez files a complaint or commences a proceeding that either: (i) any claim Fernandez may assert is barred or (ii) any administrative agency or court is without jurisdiction to entertain any claim that Fernandez may assert;

(b) the Employer shall not oppose any application Fernandez may make to any administrative agency, arbitrator, or court to effectuate the waiver provided for by paragraph 2(a);

1

      (c) Fernandez shall not contend that Employer is waiving any defense otherwise available to the Employer including, without limitation, lack of jurisdiction, exhaustion of remedies, and statutes of limitations with respect to any limitations period that expired prior to August 10, 2016; and;

      (d) the Parties shall not contend that this agreement is an admission with respect to the validity or invalidity of Fernandez's claims.

      3. This agreement has been entered into solely for the purpose of facilitating discussions between the Parties. Accordingly, it shall be considered a part of the settlement process and confidential between the Parties, is not admissible in court or in any other legal proceeding, except for the limited purpose of enforcing its terms, and cannot be used for any other purpose.

      4. The Parties to this agreement represent that each of them has been represented by counsel in connection with the making and execution of this agreement, or have each been given an opportunity to consult with counsel prior to making and executing this agreement, and each has entered into this agreement voluntarily and without pressure or duress from the other party. The attorneys or individuals executing this document represent that they have the authority to execute on behalf of their clients.

      5. This agreement may be signed in counterparts and/or by facsimile signature, which shall be deemed an original for purposes of this agreement.

      **WHEREFORE,** the Parties have entered into this agreement on the date set forth above.

Dated: _____            Dated: _____

By: _____      By: _____
    Pooja Bhutani, Esq.                             Print Name: _____
    *On behalf of Thania Fernandez*               *On behalf of CGS*

# EXHIBIT B

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   THANIA FERNANDEZ,
 4                Plaintiff,
 5           v.                          17 Civ. 3161 (ER)
 6   CATHOLIC GUARDIAN SERVICES,
     et al.,
 7                                       Conference
                  Defendant.
 8   ------------------------------x
 9
                                         New York, N.Y.
10                                       August 4, 2017
                                         10:00 a.m.
11
     Before:
12
             HON. EDGARDO RAMOS
13
                                         District Judge
14
15
16
             APPEARANCES
17
18
     BORRELLI & ASSOCIATES,
19        Attorneys for Plaintiff
     BY:  JOAN B. LOPEZ
20
21   PUTNEY TWOMBLY HALL & HIRSON LLP
          Attorneys for Defendants
22   BY:  JOSEPH B. CARTAFALSA
23
24
25
```

```
 1              (Case called)
 2              THE CLERK:  Counsel, please state your names for the
 3   record.
 4              MS. LOPEZ:  Good morning, your Honor.  My name is Joan
 5   Lopez, with Borrelli & Associates.  We represent the named
 6   plaintiff and three alternate plaintiffs.
 7              THE COURT:  Good morning.
 8              MR. CARTAFALSA:  Good morning, your Honor.  Joe
 9   Cartafalsa of Putney Twombly Hall & Hirson, attorneys for the
10   defendants in this matter: Catholic Guardian Services, Craig
11   Longly, Grace Poppe, and Delorez Ortiz.
12              THE COURT:  Good morning to you.  This matter is on
13   for a pre-motion conference at the request of the plaintiffs
14   for leave to file a motion for conditional certification.  I
15   received a letter.  Mr. Cartafalsa, we didn't receive a
16   response from you.  Do you object?
17              MR. CARTAFALSA:  We do object, your Honor.  If I could
18   explain our response?
19              THE COURT:  Sure.
20              MR. CARTAFALSA:  The order had said plaintiffs were to
21   file a letter.  I had thought it was a follow-up letter from
22   plaintiffs in support of the motion.  If you look on the
23   docket, we discovered it yesterday and we actually called the
24   Court.  So we do object.  We would have filed that.
25              THE COURT:  That's fine.  It was a scrivener's error
```

```
 1   apparently on our part?
 2             MR. CARTAFALSA:  It was.  Quite honestly, it was
 3   something I should have noticed.  Admittedly, I didn't.
 4             THE COURT:  I'm happy to blame you.  Very well.
 5             Ms. Lopez, tell me why I should give you leave to file
 6   this motion.
 7             MS. LOPEZ:  Your Honor, as the case law states in the
 8   circuit, the burden to show that the existence of opt-in
 9   plaintiffs who are similarly situated to the named plaintiffs
10   with respect to being victims of a common policy or plan in
11   terms of the defendants violating the law, in this case
12   specifically the FLSA and New York Labor Law, named plaintiffs
13   and opt-in plaintiffs are able to meet that burden.
14             We also have three opt-in plaintiffs who can name
15   other foster care case planners and nonmanagerial case managers
16   who worked overtime and who were not paid time and a half for
17   the overtime hours worked.  Pursuant to the mediation referral
18   order, I submitted documents to Mr. Cartafalsa showing the
19   Saturday schedule from 2014 to 2016 enumerating that other
20   people, other case managers, were required to work on
21   Saturdays.  So we are confident that we are able to meet that
22   burden.
23             THE COURT:  What is it generally that Ms. Fernandez
24   does, what her duties and responsibilities are?
25             MS. LOPEZ:  From 2007 through May 2014 she worked as a
```

1  foster care case planner.  Her core job duty was to facilitate
2  custody process for undocumented children.  When she was
3  promoted or she had a different position as a nonmanagerial
4  case manager, she did intakes and also worked with foster care
5  parents who wanted to adopt undocumented children.
6          THE COURT:  How many, approximately, do you believe
7  other employees fall into her category?
8          MS. LOPEZ:  At bottom I know for foster care case
9  planners Ms. Fernandez, the named plaintiff, is able to name
10 five other foster care case planners.  As for nonmanagerial
11 case managers, we have named plaintiff and three opt-in
12 plaintiffs and also three other case managers at bottom that
13 she is able to identify by name.
14         THE COURT:  Thank you.
15         Mr. Cartafalsa, as I'm sure you are familiar, the
16 standard is fairly low.  Why do you think they are not going to
17 be able to meet it?
18         MR. CARTAFALSA:  Certainly the standard is low, I
19 can't deny that.  One of the things I am surprisingly perhaps
20 not going to disagree with is there is somewhat of a common
21 policy.  I am not going to focus on that.
22         What plaintiff is not focused on and what the
23 complaint in this case failed to even allege any facts to
24 support is why these employees are not exempt under the
25 professional exemption.  The plaintiff here, the apparent

1    opt-ins, have Master's degrees.  A job requirement is at least

2    a BS in a related field as well as experience in the field.  A

3    Master's degree is preferred.

4           The employees under the Department of Labor

5    regulations, both at the federal and state level, are treated

6    as professional employees.  Catholic Guardian is a not-for-

7    profit agency.  It runs these programs through various city,

8    state, and federal grants.

9           The city, the state, and the federal government, in

10   giving these grants to run these programs, recognize that these

11   employees should be treated as exempt and do not fund overtime

12   for this level of employees, while they do for some of the

13   lower-level employees.

14          Here we may have a common policy arguably, but we

15   don't have a violation of the law.  We don't even remotely have

16   a showing of a violation of the law.  In the complaint

17   plaintiffs attempted to show a violation of the law by saying

18   that plaintiff is a nonmanager, which is not the standard under

19   the FLSA, of course.  It says the plaintiff can't hire and

20   fire.  Hiring and firing goes to the executive exemption under

21   the FLSA, it does not go to the professional exemption.

22          The professional exemption is it needs to be a course

23   of study related to the job.  We have that here.  We have

24   people with Bachelor's degrees, indeed Master's degrees.  What

25   they do is care for these children in emergency situations,

1  care for the family.  These jobs require independent investi-
2  gation and authority, which is one of the tests under the
3  professional exemption.
4            We clearly meet professional exemption.  There is no
5  showing, there is no hint at all in the complaint, that in any
6  way we have failed to meet the showing of the profession
7  exemption.
8            THE COURT:  Is there any authority for the proposition
9  that someone in this type of position, I assume maybe it has
10 come up in the past, someone in a social service position with
11 a social worker degree of some kind, advanced agree of some
12 kind, is an exempt employee?
13           MR. CARTAFALSA:  There certainly is, your Honor.  In
14 addition to the number of lawsuits -- and I can give you a
15 citations for that.  One is Paul v. Lenox Hill Hospital out of
16 the Eastern District.  The Westlaw citation is 2016 WL 4775532.
17 That's actually the magistrate's order being referred to.
18           There they found that a social worker was exempt from
19 the federal overtime provisions, and I'll quote, "because she
20 was hired as a social work with a minimum of 5 years' relevant
21 experience, a Master's degree in social work, and a New York
22 social work license."That case admittedly was not conditional
23 certification, that was on the one of the merits, but still it
24 is very clear that these social workers are exempt.
25           There is Levine v. Unity Health Systems out of the

1    Western District, 847 F.Supp.2d 507.  In that case it found
2    that social workers and related positions met the professional
3    exemption and were exempt from having to be paid overtime
4              THE COURT:  I'm recalling a case here in the Southern
5    District, and I forget exactly what the posture of the case is
6    or whether or not it is concluded.  Contract attorneys were not
7    exempt because they were reviewing documents or some such
8    thing.  So even individuals with advanced degrees aren't
9    necessarily exempt by virtue of their professional credentials.
10             MR. CARTAFALSA:  Sure, clearly on the basis of perhaps
11   what those attorneys were doing.  But in our instance, and even
12   the complaint talks about the job duties, if you look at the
13   job descriptions and all that -- I understand you don't need to
14   make a determination on the merits at this point in time, but
15   case law within this district says we need to consider the FLSA
16   in these cases and whether there was indeed a violation of the
17   law before this is going to go forward.
18             This is from plaintiff's own attorney sending a letter
19   to Catholic Guardian about how we assign her, meaning the
20   plaintiff, more responsibility than any of the other case
21   managers, how she had worked in the department.  Her duties
22   included coordination of medical care for foster children,
23   being able to respond to emergencies that arise with the foster
24   children with whom Catholic Guardian Society works, including
25   but not limited to behavioral problems, placement issues,

1  medical concerns that require immediate attention.  The job
2  descriptions talk about those factors and other factors
3  involved with this.
4         Here we are literally caring for the very lives of
5  children.  In one of the programs at issue, it is the
6  unaccompanied alien minor children, who typically do not speak
7  English, are in a foreign country.  It is a very significant
8  job.  There is a whole lot of daily independent investigation
9  and authority.
10        We are meeting all the tests under the professional
11 exemption here.  The complaint tried to say they are not
12 managers.  You heard plaintiff's counsel say a nonmanagerial
13 manager.  Okay, she is not a supervisor, she is not an
14 executive under the FLSA test, but that is not the test here.
15        THE COURT:  Thank you.
16        Ms. Lopez.
17        MS. LOPEZ:  Our understanding is plaintiffs' job
18 duties were basically pushing papers, your Honor, doing
19 intakes, talking, emailing foster care case planners in order
20 to facilitate the custody process.  For instance, let's say one
21 night an undocumented child experiences health issues.  They
22 will get a call or email at night.  My clients, their basic job
23 duty was to call the doctor who was on-site.  That's basically
24 it.
25        THE COURT:  Here is where I am.  I'm going to let you

1   make the motion.  I don't know precisely how deeply I have to
2   go into this at this point, and it is a fairly low standard.
3   How much time do you want to make your motion?
4           MS. LOPEZ:  August 31st, your Honor.
5           THE COURT:  Very well.
6           Mr. Cartafalsa, to respond?
7           MR. CARTAFALSA:  Two weeks to respond.
8           THE COURT:  Two weeks to respond.  One week to reply.
9           Ms. Rivera.
10          THE CLERK:  The motion is due August 31, the
11  opposition is due September 14, and the reply is due September
12  21.
13          THE COURT:  I don't want to leave with the wrong
14  impression here.  Does your client make any decisions
15  concerning whether or where children are going to be placed in
16  foster care, whether they should be removed from foster care,
17  whether the parents should be allowed to apply for adoption?
18          MS. LOPEZ:  I do not believe so, your Honor.
19          THE COURT:  Very well.  Unless there is anything else,
20  everyone has those dates.
21          MR. CARTAFALSA:  Your Honor, one question I have for a
22  little bit of clarification here.  It may come up in the
23  motion.  Here the plaintiffs seek relief under the federal law
24  as well as under state and city law.  There is a 216 motion
25  here but not a rule 23 motion.  In reading the complaint, I

1  wanted to be certain as to what is happening here and what is
2  not happening here.
3       You can see this in the opposition, so I may as well
4  bring it up now. It seems that plaintiff is trying to use the
5  lower standard of 216 to back-end in the state law claims. I
6  would argue that that is inappropriate. If that is not what
7  plaintiff is doing, because it is difficult to divine that from
8  the complaint . . .
9       THE COURT: I'll let her speak. The only thing I am
10 being asked to do is to grant leave to file a motion for
11 conditional certificate.
12      MR. CARTAFALSA: Understood, for the FLSA claims.
13      THE COURT: Correct.
14      Ms. Lopez?
15      MS. LOPEZ: I wasn't necessarily following, but we
16 didn't plead rule 23 class allegations. We just pled
17 collective action allegations.
18      THE COURT: Very well. Is there anything else?
19      MS. LOPEZ: That is it, your Honor.
20      THE COURT: Thank you. Have a good day.
21      (Adjourned)